## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**OKULA MUHAMMAD**                                            CIVIL NO. 21-435


**VERSUS**                                                   SECTION: T(4)

**CORNERSTONE CHEMICAL COMPANY**


### ORDER

Before the Court is the Defendant Cornerstone Chemical Company's ("Cornerstone")

*Motion for Summary Judgment*.[1] The Plaintiff Okula Muhammad filed a response.[2] For the

following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

In May of 2020, Okula Muhammad was fired from Cornerstone Chemical Company

("Cornerstone").[3] Mr. Muhammad, who is black, worked as a "reactor operator" at Cornerstone's

Westwego chemical plant for six years.[4] Before being fired in 2020, Mr. Muhammad was

terminated in 2018, but reinstated following an arbitrated dispute.[5] Now, Mr. Muhammad contends

Cornerstone recently fired him in retaliation for the arbitration and, in turn, because he is black.[6]

Specifically, Mr. Muhammad maintains that Cornerstone's management, including his supervisor

Greg Ritter, held racial and "retaliatory animus" towards him following his reinstatement and, as

---

[1] R. Doc. 47.
[2] R. Doc. 58.
[3] R. Doc. 1 at 3; R. Doc. 58 at 18-19.
[4] *Id.* at 3, 6.
[5] *Id.* at 3, 8-9.
[6] R. Doc. 1 at 4.

a result, concocted "fabricated allegations" to justify firing him.[7] On the other hand, Cornerstone maintains Mr. Muhammad was terminated because, among other things, he caused a dangerous "gas leak" at its plant.[8]

After his termination, Mr. Muhammed filed a claim with the Equal Employment Opportunity Commission alleging that "Cornerstone unlawfully discriminated against him" on the basis of his race and prior complaints.[9] Subsequently, he brought this law suit raising five claims: (1) a Title VII discrimination claim, (2) a Title VII retaliation claim, (3) a 42 U.S.C. § 1981 discrimination claim, (4) a state law race-discrimination claim, and (5) a Louisiana environmental whistleblower claim.[10] In the present motion, Cornerstone asks this Court to dismiss Mr. Muhammad's claims.[11]

## I.      Title VII Discrimination Claim

Generally, Cornerstone asks this Court to dismiss Mr. Muhammad's federal and state discrimination claims because they do not pass muster under the *McDonnell Douglas* framework.[12] Specifically, Cornerstone raises three arguments.[13] First, Cornerstone maintains that Mr.

---

[7] *Id.* at 7, 14.
[8] R. Doc. 58. at 15.
[9] *Id.* at 3-4.
[10] *See* R. Doc. 1.
[11] R. Doc. 47-1.
[12] R. Doc. 47-1.
[13] As an initial matter, Cornerstone maintains the only "adverse employment action" that Mr. Muhammad can raise is his 2020 firing. *Id.* at 6.

Muhammad cannot point to "a single comparator" who was treated more favorably than him.[14] Cornerstone argues that, under *McDonnell Douglas*, a "similarly situated" person must have a similar disciplinary history.[15] Here, Cornerstone contends, no other employee was on "probation" and committed a safety violation on par with Mr. Muhammad's gas leak.[16]

Second, Cornerstone maintains it had a legitimate, non-discriminatory reason for firing Mr. Muhammad, namely repeated "safety and performance violations."[17] Specifically, Mr. Muhammad was "unable to adequately perform a routine task" of his job, slept while at work, and caused a dangerous "release of hydrogen cyanide."[18] Third, Cornerstone contends its reasons for firing Mr. Muhammad are not pretextual and Mr. Muhammad cannot offer any reliable evidence to the contrary.[19] Cornerstone contests Mr. Muhammad's own statements as "self-serving" and evidence regarding a second gas-leak at the chemical plant as "immaterial."[20]

Mr. Muhammad challenges each of Cornerstone's arguments.[21] First, Mr. Muhammad contends there are at least three applicable comparators. One is a white man who "replaced" him, and the other two are white employees who were not fired after a "more significant" gas leak on

---

[14] *Id*. at 7.
[15] *Id*.
[16] *Id*. at 7-8. Cornerstone downplays any comparison to another employee, R.J. Blank, because Mr. Blank was fired after committing an allegedly worse employment violation.
[17] *Id*. at 9.
[18] *Id*.
[19] *Id*. at 12-14.
[20] *Id*. Also, Cornerstone maintains that Mr. Ritter, Mr. Muhammad's supervisor, did not have final decision-making authority for Mr. Muhammad's firing and, therefore, any animus he displayed cannot be tied to the decision.
[21] R. Doc. 58.

the same day Mr. Muhammad allegedly caused one.[22] Second, Mr. Muhammad maintains Cornerstone's reason for firing him, safety, is dishonest because he did not cause any gas leak.[23] Mr. Muhammad emphasizes that the gas sensor that alerted the plant to the gas leak was "half a football field away from" him and, therefore, he could not have been involved.[24] Finally, Mr. Muhammad contends Cornerstone's reasons are pretextual, and "unworthy of credence," because two other employees were not fired after a gas leak and Mr. Ritter, his supervisor, actively lobbied management to terminate him on the basis of his skin color and his past grievances with Cornerstone.[25]

## II.      Title VII Retaliation and 42 U.S.C. § 1981 Claims

Additionally, Cornerstone asks this Court to dismiss Mr. Muhammad's retaliation and § 1981 claims. Cornerstone argues Mr. Muhammad's retaliation claim must fail because he "cannot identify any protected activity," like filing a complaint, that Cornerstone acted on when it fired him.[26] As for § 1981, Cornerstone argues individuals like Mr. Ritter cannot be held liable unless they are considered an "employer."[27] Here, Cornerstone contends, there is no evidence that Mr. Ritter took a role in Mr. Muhammad's termination or was "essentially the same" as his employer.[28]

---

[22] *Id.* at 30-31.
[23] *Id.* at 32-33.
[24] *Id.*
[25] *Id.* at 33-34.
[26] *Id.* at 18-19. In short, Cornerstone contends Mr. Muhammad "cannot show any causal link" between his termination and a complaint he lodged before his being fired in 2018, much less any other complaint . *Id.* at 20-21.
[27] *Id.* at 22.
[28] *Id.*

4

Mr. Muhammad disagrees.[29] Mr. Muhammad argues "there is no debate that [he] complained he was being targeted by [Mr.] Ritter because of his race."[30] Mr. Muhammad points to an email where he informed a human resources officer that he was experiencing "targeted behavior from plant superintendent Greg Ritter."[31] As for § 1981, Mr. Muhammad maintains Mr. Ritter was the "final decision-maker" in his termination and, therefore, acted in place of Cornerstone.[32] Additionally, he contends that "even if Ritter did not 'formally' terminate [him], the record is clear [he] was terminated based on" evidence and statements given to management by Ritter, so he played an indispensable role in the decision.[33] Consequently, Mr. Muhammad argues, Mr. Ritter may be liable under § 1981 for Mr. Muhammad's termination.

### III.    Louisiana Whistleblower Claim

Also, Cornerstone argues Mr. Muhammad's state-law whistleblower claim cannot stand because Mr. Muhammad "did not identify any law, rule, or regulation" that Cornerstone violated, and he did not file a formal complaint.[34] Instead, Cornerstone contends, Mr. Muhammad issued a "vague" statement about an informal Cornerstone policy concerning product loss in an attempt to "deflect" blame from himself.[35] On the other hand, Mr. Muhammad maintains he had genuine

---

[29] R. Doc. 58.
[30] *Id.* at 8.
[31] *Id.* at 10 (brackets omitted). Around this time, Mr. Ritter allegedly brushed against Mr. Muhammad's shoulder and called another black employee "boy." *Id.* at 8.
[32] *Id.* at 33-34.
[33] *Id.*
[34] *Id.* at 23-24.
[35] *Id.* at 24.

concerns about the environmental impact or potential illegality of one of Cornerstone's chemical containment processes and, as a result, "consistently complained" about it to his supervisors.[36]

## LAW & ANALYSIS

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record," but it must "refrain[] from making credibility determinations or weighing the evidence."[38] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[39] The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.[40] "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial."[41]

---

[36] *Id.* at 31-32.
[37] Fed. R. Civ. P. 56(a).
[38] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398–99 (5th Cir. 2008).
[39] *Galindo v. Precision Am. Corp*., 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).
[40] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).
[41] *Smith v. Reg'l Transit Auth*., 827 F.3d 412, 420 n.4 (5th Cir. 2016).

## I.      Race Discrimination and Retaliation

Under Title VII of the Civil Rights Act of 1964, it is illegal to discriminate against an employee "because of such individual's race, color, religion, sex, or national origin."[42] To support a Title VII adverse employment action claim, a plaintiff may rely on direct or circumstantial evidence.[43] When a claim rests exclusively on circumstantial evidence, the district court must apply the three-part *McDonnel Douglas* burden-shifting framework.[44] First, the plaintiff must make a prima facie showing of discrimination.

> [A plaintiff must show that] "(1) he belongs to a protected class; (2) he applied for and was qualified for a position for which applicants were being sought; (3) he was rejected; and (4) a person outside of his protected class was hired for the position."[45]

In a termination case, the plaintiff must demonstrate that " he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."[46] If a plaintiff passes the first step, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for their employment action.[47] An employer's "subjective assessment" of a candidate "may serve as a legitimate, nondiscriminatory reason," but only if it is supported by

---

[42] 42 U.S.C. § 2000.
[43] *Burrell v. Dr. Pepper Grp., Inc.*, 482 F. 3d 408, 411 (5th Cir. 2007).
[44] *Id.*; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).
[45] *Id.* at 411-412.
[46] *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)/
[47] *McDonnell Douglas*, 411 U.S. at 802.

a "clear and reasonably specific basis" such as objective scoring.[48] If the defendant satisfactorily

does so, then the burden shifts back to the plaintiff to produce "substantial evidence indicating that

the proffered...reason is a pretext for discrimination."[49] A plaintiff can prove pretext through

"evidence of disparate treatment or by showing that the employer's proffered explanation is false

or 'unworthy of credence.'"[50] A proffered explanation is "false or unworthy of credence if it is not

the real reason for the adverse employment action."[51]

In a Title VII retaliation case, the plaintiff "must first make the following prima facie

showing: '(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment

action occurred, and (3) that a causal link existed between the protected activity and the adverse

action.'"[52] From there, the *McDonnel Douglas* burden-shifting analysis controls, including the

defendant's chance to assert a "legitimate" purpose for their action and the plaintiff's opportunity

to prove "pretext."[53]

Here, it is uncontested that Mr. Muhammad is black, was qualified to be a plant operator,

and was fired by Cornerstone. Therefore, questions before the Court are whether Cornerstone

---

[48] *Alvarado v. Texas Rangers*, 492 F. 3d 605, 616-617 (5th Cir. 2007) ("We simply hold that, given DPS's failure to evidence the grounds for the Board's scoring of Alvarado and the other candidates in the second, subjective stage of the promotion and selection process, DPS has failed to proffer a reason for Alvarado's non-selection that, if believed, would allow the jury to conclude that Alvarado's non-selection was not the result of intentional sex discrimination.

[49] *Laxton v. Gap Inc.*, 333 F. 3d 572, 578 (5th Cir. 2003).

[50] *Id.* (citation omitted).

[51] *Id.*

[52] *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) *(quoting Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 471 (5th Cir.2002)). A plaintiff "need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case." *Id.* (citation omitted).

[53] *Id.*

treated any similarly situated people better and whether the "gas leak" rationale is pretext or not.[54]

After reviewing the filings and the law, the Court finds several genuine factual disputes that, in the context of those two questions, bar summary judgment. Specifically, the Court identifies at least four pivotal issues that cannot be resolved at this time.

First, it is unclear if there are people who were "similarly situated" to Mr. Muhammad and, if so, whether they were treated more favorably than him. Mr. Muhammad suggests two white employees caused a "more significant" gas leak the same day as he did but were not fired. Cornerstone contests that, saying such information is "immaterial." This Court disagrees. If true, such evidence may indicate Cornerstone's principal reason for firing Mr. Muhammad, safety, is "unworthy of credence" and, therefore, pretextual.[55] Relatedly, the parties dispute whether Mr. Muhammad caused the gas leak at all. If he did not, then Cornerstone's proffered reason may, again, be indicative of pretext or be altogether illegitimate.[56]

Second, the parties genuinely contest whether Cornerstone's management, including Mr. Ritter, held racial or retaliatory animus towards Mr. Muhammad. Mr. Muhammad relies on internal text messages and deposition testimony to show that Mr. Ritter and other Cornerstone officials

---

[54] Per *McDonnell Douglas*, Mr. Muhammad must identify a comparator who was treated more favorably than him. Subsequently, Cornerstone must provide this Court with a legitimate, non-discriminatory reason for firing Mr. Muhammad. At the same time, Mr. Muhammad may offer evidence showing those reasons are mere "pretext" or "unworthy of credence."

[55] Additionally, in the comparator context, the full context of Mr. Muhammad's disciplinary record remains unclear.

[56] Additionally, it is entirely unclear if the gas leak was, in fact, a dangerous situation. If it was not, it could be further evidence of pretext.

may have conducted a coordinated campaign to oust him without incident.[57] At the same time, Mr. Ritter had two interactions with Mr. Muhammad and another employee that, under Rule 56, may evidence an animus towards Mr. Muhammad.[58] In response, Cornerstone emphasizes the independent nature of its investigation and termination of Mr. Muhammad. Businesses are allowed to terminate employees for cause, but, under Rule 56, Mr. Muhammad's allegations may show that Cornerstone's reason was pretext or, even if he was fired for the gas leak, aspects of race and retaliation were a "motivating factor" in Cornerstone's decision.[59]

Third, it remains unresolved whether Mr. Ritter played a decisive role in Mr. Muhammad's termination. Cornerstone submits an independent investigation led to the firing decision. Mr. Muhammad, relying on internal records and deposition testimony, maintains that Mr. Ritter had a hand in his firing. Specifically, Mr. Muhammad contends Mr. Ritter fashioned evidence and allegations in order to lobby management to fire Mr. Muhammad.[60] Under Rule 56, if Mr. Ritter played a key role in the employment decision, that may constitute evidence of pretext and render Cornerstone's proffered reason illegitimate.

---

[57] R. Doc. 58 at 6-7, 14, 17-21.
[58] Mr. Ritter allegedly purposefully bumped into Mr. Muhammad's shoulder and, a year prior, was reprimanded for calling a black employee "boy." *Id.* at 6-7.
[59] Notably, this analysis would include credibility determinations, including of Mr. Ritter, that this Court cannot undertake on summary judgment.
[60] *Id.* at 6-7, 16-21, 23.

Finally, it must be determined if Mr. Muhammad actually lodged complaints, formal or informal, against Cornerstone and its employees.[61] Mr. Muhammad maintains that he did so "consistently," both in an email to human resources and to individual management officials.[62] Cornerstone contests Mr. Muhammad's argument, arguing he only raised a "single complaint of race discrimination," and it was in 2018 against an employee unrelated to this litigation. However, if Mr. Muhammad's allegations are true, it may prove that Cornerstone retaliated against him for complaining or, at the very least, turned a blind eye to retaliation or discrimination by Mr. Muhammad's supervisors.

Ultimately, per Rule 56, this Court must resolve the above genuine factual disputes in Mr. Muhammad's favor. Consequently, the Court finds summary judgment is precluded on Mr. Muhammad's discrimination and retaliation claims. Accordingly, in regard to those claims, the motion is **DENIED**.

## II.      42 U.S.C. § 1981 Claim

Per 42 U.S.C. § 1981, all citizens of the United States are given full protection under the law regardless of race. Mr. Muhammad asserts a § 1981 claim against Mr. Ritter and Cornerstone for intentional discrimination. However, considering the same outstanding factual disputes

---

[61] In general, the parties dispute whether a protected activity ever occurred. Per Rule 56 and the evidence put forth, this Court cannot answer that question at this time.
[62] R. Doc. 58 at 4, 8-10, 31-32.

11

surrounding Mr. Muhammad's discrimination and retaliation claims, this Court cannot enter

summary judgment in either party's favor. As noted, it is unclear whether Mr. Ritter was "the final

and actual decision maker," in Mr. Muhammad's firing and, in turn, whether Mr. Ritter held racial

animus towards Mr. Muhammad.[63] Accordingly, in regard to § 1981, the motion is **DENIED**.

### III.     Louisiana Whistleblower Claim

Under Louisiana Revised Statute § 30:2027, employees are protected from "retaliatory

action or other adverse employment action…for reporting possible environmental violations."[64]

The law protects several specific activities, including disclosing or "threaten[ing] to disclose" to

the public a practice that the "employee reasonably believes is in violation of environmental

law."[65] Considering the reasonable belief element, there is no requirement that there be an actual

violation of the law or that the plaintiff cite a particular law.[66] To prevail on such a claim, the

plaintiff must show his or her employer took an adverse employment action and that action was

motivated by or connected to a protected activity.[67]

After reviewing the filings and the applicable law, the Court finds there can be no genuine

dispute that Mr. Muhammad's § 30:2027 claim is meritless. Mr. Muhammad was not required to

---

[63] Therefore, it remains unresolved whether Mr. Ritter was "essentially the same" as Cornerstone throughout Mr. Muhammad's termination. *See Qiang Li v. Verizon Wireless Texas, LLC*, 2020 WL 2515953, at n. 5 (N.D. Tex. 2020).
[64] *Collins v. State ex rel. Dep't of Nat. Res*., 2012-1031 (La. App. 1 Cir. 5/30/13), 118 So. 3d 43, 49.
[65] La. R.S. § 30:2027.
[66] *See Porto v. TBC Grand Bayou, LLC*, 2020 WL 2393733 (La. App. 1 Cir. 2020); *Collins*, 118 So. 3d 43.
[67] *Powers v. Vista Chem. Co.,* 109 F.3d 1089, 1094 (5th Cir. 1997);  *Stone v. Energy Services, Inc.*, 9 So. 3d 193 (La. App. 4 Cir. 2009).

cite a specific violation or to show there was an actual violation. However, he is required to show some causal connection between his complaints and his firing. Mr. Muhammad cannot point to any complaint or report, much less a conversation, involving an environmental law violation or a "reasonabl[e] belie[f]" regarding the violation of an environmental law. Additionally, he cannot raise any evidence showing Cornerstone fired him because of such a complaint or belief. Instead, Mr. Muhammad relies solely on vague personal testimony.[68] Accordingly, in regard to the §30:2027 claim, the motion is **GRANTED**.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that, in regard to the discrimination, retaliation, and § 1981 claims, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that, in regard to the state-law whistleblower claim, the motion is **GRANTED**.

New Orleans, Louisiana this 2nd day of August, 2022.

_____
Hon.Greg Gerard Guidry
United States District Judge

---

[68] Mr. Muhammad simply states "[t]here is no question" that he "consistently complained" about "suspected environmental violations," but cites no evidence. (R. Doc. 58 at 31-32). Instead, he relies on his alleged complaints regarding racial discrimination. That is not sufficient to support a § 30:2027 claim.